**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

TRI, Inc.,

Plaintiff,

v.

Boise Cascade Office Products, Inc.,
and Honeywell, Inc.,

Defendants.

Civil No. 00-1464 (RHK/AJB)

**ORDER**

---

Defendant Honeywell, Inc.'s January 4, 2002 letter request to file a reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Sanctions is **GRANTED** and said January 4, 2002 letter, attached hereto, shall constitute the reply.

Dated: January 7, 2002

RICHARD H. KYLE
United States District Judge

FILED JAN 07 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

# DORSEY & WHITNEY LLP

MINNEAPOLIS
NEW YORK
SEATTLE
DENVER
WASHINGTON, D.C.
NORTHERN VIRGINIA
DES MOINES
LONDON
ANCHORAGE
SALT LAKE CITY
BRUSSELS

SUITE 1500
50 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868
www.dorseylaw.com

COSTA MESA
BILLINGS
FARGO
HONG KONG
GREAT FALLS
ROCHESTER
TOKYO
MISSOULA
VANCOUVER
TORONTO
SHANGHAI

**ROBERT R. REINHART**
**(612) 340-7835**
**FAX (612) 340-2777**
**reinhart.robert@dorseylaw.com**

January 4, 2002

**Via MESSENGER**
The Honorable Richard H. Kyle
United States District Court
764 Federal Bldg.
316 North Robert Street
St. Paul, MN 55101

Re: TRI, Inc. v. Boise Cascade Office Products, Inc. and Honeywell, Inc.
Court File: 00-1464 (RHK/AJB)

Dear Judge Kyle:

Although the parties have filed their submissions in connection with Defendants' motions for sanctions according to the rules applicable to non-dispositive motions, see D.Minn. LR 7.1(a), I understand from a conversation with counsel for co-Defendant Boise Cascade Office Products, Inc., that Your Honor may be willing to consider a reply to Plaintiff TRI, Inc.'s, Memorandum in Opposition to Defendants' Motions for Sanctions. If that is the case, please consider this letter both a request for leave to file a reply and the reply of Defendant Honeywell, Inc., to Plaintiff's opposition memorandum.

Simply stated, Plaintiff's opposition misses the thrust of Honeywell's argument, conflates numerous issues ancillary to the question before the Court on a Rule 11 motion, and ultimately devolves into an exercise in finger-pointing and name-calling. Honeywell will not burden the Court with a lengthy, point-by-point refutation of Plaintiff's assertions. In Honeywell's view, the controlling issue is fundamental; the applicable standard high. A party ought not to have to submit lengthy memoranda and affidavits to make its point, either for or against an award of fees and costs.

With the Court's indulgence, we offer the following simply to minimize the potential for confusion. First and foremost, Honeywell does not consider a motion for fees and costs under Rule 11 tantamount to an indictment of the integrity of the party against whom it is directed. In fact, as evidenced by the case law cited by Honeywell in its original memorandum, a court need

not find that a party's counsel acted in bad faith in order to award fees and costs under Rule 11. See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) (holding that attorneys' fees may be awarded upon a finding that an action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith"); accord American Family Life Assur. Co. of Columbus v. Teasdale, 733 F.2d 559, 569 (8th Cir. 1984); Baker v. Citizens State Bank of St. Louis Park, 661 F. Supp. 1196, 1198 (D. Minn. 1987) (holding that liability under Rule 11 does not depend on "the signor's subjective intent").

Properly considered, the primary question in the context of a Rule 11 motion is not one of integrity but one of judgment. As officers of the court, attorneys have an obligation to make reasoned and reasonable decisions throughout the course of any litigation they initiate to make sure that the claims they assert on behalf of their clients are, as Rule 11 states, not presented for any improper purpose, are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and are fairly supported by the evidence or at least likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

The nature of the obligation, therefore, is both ongoing and objective – an attorney must continually assess the legitimacy of his or her client's case in light of the developing discovery record and the underlying legal research that the attorney does or reasonably should do. If, at some point, a reasonable attorney would conclude that such claims lack sufficient evidentiary or legal support, it is incumbent upon the attorney in question to take appropriate remedial measures, such as counseling the client to amend or dismiss such claims or, in extreme cases, withdrawing representation. Rule 11, therefore, serves as an important counterbalance to the sway of unbridled client advocacy and, in the process, insures that the resources of the courts and other litigants are not expended needlessly on claims that have no likelihood of success. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) ("[T]he central purpose of rule 11 is to deter base filings in district court and . . . streamline the administration and procedure of the federal courts.").

Interestingly, despite 35 pages of legal briefing and an extensive affidavit, with exhibits, Plaintiff and its counsel still have failed to address the salient points of Honeywell's motion. Plaintiff does not adequately explain, for example, why it chose to drop certain claims against Boise but not interdependent and virtually identical claims against Honeywell. Nor, for that matter, does Plaintiff adequately explain its attempt to change the nature of the discrimination claims against Honeywell at the hour of summary judgment, when its counsel admitted at oral argument that it easily could have amended its complaint in advance. Most significantly, Plaintiff does not adequately explain why it continued to insist that Honeywell and Boise had entered into an economically irrational, factually unsupported, and legally dubious antitrust conspiracy, when every single witness deposed by Plaintiff (even former employees of the parties who would have no particular to misconstrue to evidence) adamantly denied the existence of such a conspiracy

and Plaintiff itself could not present a coherent theory as to what Boise and Honeywell allegedly had conspired to do.[1]

Plaintiff offers nothing to justify these significant omissions. Rather, Plaintiff seemingly focuses its energies on pointing out minor inconsistencies in the testimony of certain of Defendants' witnesses, drawing from these discrepancies the rather remarkable conclusion that counsel for Defendants coached witnesses, manufactured testimony, and assisted in the concealment or destruction of evidence.[2] In so doing, Plaintiff and its counsel apparently hope to convince the Court that they should be excused from the imprudent decisions they made in this case, not because such decisions were reasonable or justified but because everyone's "hands are dirty."

Again, Plaintiff seems to have missed the thrust of Honeywell's argument. Honeywell never expected complete consistency among every piece of testimony offered by every witness in this litigation or that every piece of evidence would support either one side or the other. However, Honeywell did expect that when, after months of discovery, Plaintiff could not adduce a single piece of affirmative evidence of a conspiracy between Boise and Honeywell to economically ruin Plaintiff or any discriminatory bias in Honeywell's dealings towards Plaintiff, that Plaintiff would dismiss the claims against it. Even if Plaintiff thought or hoped at the beginning of discovery that such evidence would present itself, it ought to have known by the end of discovery that such evidence simply did not exist. In fact, that is precisely why Honeywell reminded Plaintiff of the strictures of Rule 11 and requested that Plaintiff reconsider its increasingly irrational position before incurring the expense of moving for summary judgment.

After countless pages of legal argument, affidavits, and exhibits, Plaintiff still has not provided a reasoned rebuttal to Honeywell's contention that at some point prior to or by the close of discovery, Plaintiff and its attorney reasonably should have apprehended the lack of evidentiary and factual support for the claims against Honeywell. As sincerely as Plaintiff and its counsel may believe in the validity of their position, their legal theory is both illogical and founded on tortured inference from rationally unrelated incidents. Honeywell is not questioning the integrity

---

1 The Court may recall that Plaintiff finally settled upon a theory of price-fixing at summary judgment. Boise effectively refuted Plaintiff's ill-conceived, eleventh hour theory, however, by demonstrating that prices of TRI products did not follow any clear pattern and went both up and down with some frequency.

2 Honeywell hesitates to even dignify these wild accusations with a response, but it will note that Plaintiff quotes deposition testimony selectively and inchoate and that such testimony, when considered in full and in context, does not support the serious allegations made by Plaintiff and its counsel. Just by way of example, Plaintiff makes much of the seeming inconsistent testimony of Michael Schneider regarding the date of the conversation he had with Boise regarding TRI. See Plaintiff's Memorandum in Opposition to Defendants' Motions for Sanctions at 25-26. Plaintiff, however, fails to point out that Mr. Schneider's initial recollection, that the call took place sometime in October, is shared by every other witness and is also reflected in Plaintiff's own documents.

DORSEY & WHITNEY LLP



of Plaintiff or its counsel, just the irresponsible and undisciplined approach that unfairly cost Honeywell dearly.

As Honeywell explained in its original memorandum, after being forced to defend itself (successfully) in two expensive and completely baseless lawsuits over the last ten years involving basically the same instigator (Joseph Thomas) and the same plaintiff's counsel (William Mavity) and costing Honeywell hundreds of thousands of dollars in legal fees and costs, Honeywell believes that sanctions are warranted, both to remedy irresponsible behavior in this action and to insure that this cycle not be repeated. The Court has the sole discretion to award sanctions to "deter repetition of such conduct or comparable conduct by others similarly situated," including an award of "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Civ. P. 11(c)(2). Honeywell respectfully urges the Court to exercise that discretion to order an award of the legal fees and costs Honeywell needlessly expended in defense of this frivolous action and, perhaps, to bring to a close the long history of such litigation between the parties.

Very truly yours,

Robert R. Reinhart

RRR/lc

William J. Mavity, Esq.
John Harper III, Esq.